[Civ. No. 14164. Second Dist., Div. Two. Feb. 8, 1944.]

GEORGE H. OSWALD, Appellant, v. NORTHROP AIR-
CRAFT, INC. (a Corporation), Respondent.

George D. Blair for Appellant.

O'Melveny & Meyers, Pierce Works and Homer I. Mitchell for Respondent.

MOORE, P. J.—From a judgment denying plaintiff specific performance of an option-contract for the purchase of a parcel of two acres in the city of Hawthorne, hereinafter referred to as the city, and quieting title thereto in defendant in accordance with the cross-complaint, plaintiff appeals.

Having an option to purchase a tract of some 80 acres from the city, defendant granted to plaintiff by a writing an option to purchase a parcel of two of the acres. The writing bore date of October 31, 1940. It provided that Northrop should notify Oswald promptly of its exercise of its own option to purchase the tract, and that Oswald should purchase the two acres by paying therefor the sum of $1,000

within a period of three months after Northrop's notice to him that it had acquired the tract under its own option.

By letter dated April 14, 1942, Northrop advised plaintiff that it was at that time engaged in exercising its option to purchase the land from the city. Eighteen days later the purchase was consummated and on the 5th day of May, 1942, Northrop mailed to Oswald a letter which contained the following: "Last Saturday, May 2, we exercised the option which we had under the Lease and Option Agreement of October 25, 1940, between us and the city. In a letter to you dated October 31, 1940, we agreed to notify you promptly of our exercise of this option. Please consider this letter the notice required by the former letter. Reference is made to the letter of October 31, 1940, for the rights which you now have with respect to the purchase of the property involved." Under Oswald's option that letter of May 5th fixed August 5, 1942, as the last day on which he might exercise his option to purchase the two acres.

However, nothing was heard from plaintiff until the 29th of October, 1942, at which time counsel for plaintiff addressed a letter to defendant in which he stated that he had been advised by Oswald that the latter had not received any information that Northrop had exercised its rights to purchase the land. Concomitant with the delivery of that letter, Oswald's counsel tendered $1,000 to Northrop as the sum "called for under the terms of said letter of October 31, 1940, as payment for said land."

Following the refusal of Northrop to accept the $1,000 and to convey the two acres to Oswald, the latter instituted this action on November 28, 1942, to enforce performance of his option to purchase under the instrument of October 31, 1940. Subsequently, on December 4, 1942, he filed his amended complaint.

Attached to the "answer and cross-complaint" of defendant was a copy of the letter of May 5, 1942, which the answer alleged had been mailed to Oswald on or about its date. At no time after filing the answer and cross-complaint did Oswald ever file an affidavit denying the genuineness or due execution of the letter of May 5, 1942, although his pleading alleged that he had not prior to October 15, 1942, been informed that Northrop had purchased the tract from the city.

In the course of attempting to prove that his tender of the

$1,000 was prior to his receipt of notice that defendant had acquired title to the tract, plaintiff was by his counsel asked the following question:

"When was the first time, Mr. Oswald, that you were informed or received any information that the Northrop people had exercised their option with the city of Hawthorne in reference to buying the property?"

Objection to this question was sustained on the grounds (a) that there was no issue as to notice of defendant's purchase of the tract; (b) that Northrop had pursuant to its option purchased the tract from the city and had the record title; (c) that on or about May 5, 1942, defendant had informed plaintiff of its purchase; (d) that the genuineness and due execution of the letter written by Northrop to defendant on May 5, 1942, containing such information had not been denied. The court's order in sustaining the objection to the question is assigned as error.

After that objection had been sustained, plaintiff asked leave to file an application for relief under section 473, Code of Civil Procedure, in order that he might still file an affidavit denying the genuineness and due execution of the letter. The court granted leave but when the case was again called on the following Monday plaintiff declined to make his application but, instead, asked leave to file an amendment to his amended complaint so as to allege that plaintiff was not notified or informed of such purchase until after October 15, 1942, and that fourteen days later he tendered the $1,000 to defendant for the purchase of the property.

It was not error for the court to sustain the objection to the question propounded to Oswald. The notification letter of May 5, 1942, having been attached to the answer, taken with the allegation that it had been mailed to Oswald, was conclusive as to the delivery of the notice provided by the option after the lapse of ten days within which plaintiff failed to execute and serve an affidavit denying the genuineness and due execution of the letter. (Sec. 448, Code Civ. Proc.; *Stoneman* v. *Fritz*, 34 Cal.App.2d 26 [92 P.2d 1035]; *Sloan* v. *Diggins*, 49 Cal. 38; *Gajanich* v. *Gregory*, 116 Cal. App. 622 [3 P.2d 389]; *Sharp* v. *Quinn*, 214 Cal. 194 [4 P. 2d 942, 78 A.L.R. 501]; *Bank of America* v. *Richardson*, 29 Cal.App.2d 554 [85 P.2d 139].) "Due execution" includes delivery. The failure of plaintiff to file such affidavit

had the same effect as if, after the expiration of ten days following the filing of the answer and cross-complaint, plaintiff had filed a stipulation that he had duly received a copy of the letter; that it was a true copy of the original which was a genuine document; that it was signed by Northrop and that it was delivered in the manner prescribed by law. This rule has been consistently followed since the decision of the Diggins case in 1874. ■ When a pleading contains an allegation of fact which is distinctly and unqualifiedly admitted there is no issue as to that fact. (*Welch* v. *Alcott*, 185 Cal. 731, 754 [198 P. 626].) It follows that had the court allowed Oswald to testify that he did not receive the letter such action would have required a reversal of a judgment for plaintiff. (*Stoneman* v. *Fritz, supra.*) Having rejected the opportunity to be relieved from the effect of his failure to deny the receipt of the letter, the allegation of having mailed the letter and having attached the copy spelled finality for that issue. The court's ruling was not error.

■ Neither was there error in the court's refusal to allow plaintiff to amend his pleading. Having failed to deny the letter as required by the code (sec. 448) his only recourse for relief was under section 473. Instead of availing himself of that remedy he asked leave to amend his amended complaint by an allegation that no letter was ever delivered or received. The allowance of such amendment was discretionary with the court. That the court was not arbitrary in holding that plaintiff's delay in offering the proposed amendment till the second day of trial was unreasonable is established by appellant's failure to make any showing that would reasonably require the court to grant the order as well as by his refusal to apply for relief from his default. The proposed allegation was irrelevant by reason of the admission of the genuineness and due execution of the letter. For these reasons we cannot say that the court abused its discretion. (*Knapp* v. *B. Nicoll & Co.*, 112 Cal.App. 187, 193 [296 P. 655].) Appellant protests loudly that he should have been permitted to amend for justice's sake. If the code requires a litigant to make his denials after a prescribed fashion, his justice is measured by the statute, not by the litigant's biased concept of justice. If the code authorizes the trial court to exercise its discretion with respect to matters of procedure, justice again is measured strictly by the statute

and by the soundness of the court's discretion in applying it. As the statute was not observed by plaintiff in conserving his rights, so the court was not arbitrary in enforcing the rules therein contained.

 Appellant assigns as error the court's order for judgment on the cross-complaint. After the pleadings were settled they all constituted one case. The answer traversed the essential declarations of the amended complaint and plaintiff's declination to deny receipt of the letter entitled defendant to judgment rejecting the demands of plaintiff. The cross-complaint alleged in conventional form an action to quiet title. The cross-answer admitted the record title in defendant subject to plaintiff's claim as alleged in his amended complaint. After plaintiff's claim as asserted in his amended complaint had been decided against him, the title was by that award effectually quieted against plaintiff. (*Knight* v. *Whitmore,* 125 Cal. 198 [57 P. 891].) No number of decrees quieting title against plaintiff would have added potency to the judgment, already awarded to defendant, that plaintiff was not entitled to enforce his claim of right to purchase the two acres from defendant. The advantage of quieting title in a party lies in the fact that it satisfies the conventional yearning of every litigant whose title has once been attacked to have a decree of equity finally defeat all asserted claims. The customary form of a judgment "quieting title" is preferred because of its ubiquitous use and significance.

 It having been admitted that the record title was vested in defendant the burden was upon plaintiff to establish the change of the status of the title. (*Bell* v. *Pleasant,* 145 Cal. 410, 415 [78 P. 957, 104 Am.St.Rep. 61].) This plaintiff failed to do. His admission of the status of the record title and his failure to show a superior right combined to expunge his name from the chain of title. A fact admitted by a pleading is equivalent to a finding based upon undisputed evidence. It cannot be contradicted. It will prevail against a denial in the same pleading. (*Parkside Realty Co.* v. *MacDonald,* 166 Cal. 426, 432 [137 P. 21]; *Birch* v. *Monroe,* 70 Cal.App. 656 [234 P. 125]; 49 Cal.Jur. 287, sec. 352.)

Plaintiff's attempt to require a treatment of the cross-complaint as a separate case is unavailing. There is only

one case in an action in equity, however many may be the parties or the pleadings. The court properly quieted title in defendant after having adjudicated the inequity of plaintiff's alleged cause.

The judgment is affirmed.

Wood (W. J.), J., and McComb, J., concurred.

A petition for a rehearing was denied March 7, 1944, and appellant's petition for a hearing by the Supreme Court was denied April 6, 1944. Carter, J., voted for a hearing.